**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

_____

DEVINCCI SALAH HOURANI and     )
ISSAM SALAH HOURANI,      )
      )
      **Plaintiffs,**      )
      )     **Case No. 1:10-cv-01618 TFH**
      **v.**      )
      )
ALEXANDER V. MIRTCHEV, KRULL     )
CORPORATION, GLOBALOPTIONS, INC.,     )
and GLOBALOPTIONS MANAGEMENT, INC.,     )
      )
      **Defendants.**      )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GLOBALOPTIONS, INC. AND GLOBALOPTIONS MANAGEMENT, INC.'S JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR <u>COMPENSATORY AND PUNITIVE DAMAGES</u>**

Dated: November 22, 2010

/s/ Mark David Hunter              /s/ Morton S. Taubman
Mark David Hunter, Esquire         Morton S. Taubman, Esquire
Leser Hunter Taubman & Taubman, PLLC    Leser Hunter Taubman & Taubman, PLLC
DC Bar No. 974569             DC Bar No. 316604
255 University Drive            1201 15th Street, N.W., Second Floor
Coral Gables, Florida 33134        Washington, DC 20005
Tel:     (305) 629-8816          Tel:    (202) 347-9090
Fax:    (305) 629-8877          Fax:    (202) 659-2679
E-Mail: mdhunter@lhttlaw.com      E-Mail: mtaubman@isiwdc.com

*Attorneys for GlobalOptions, Inc. and*
*GlobalOptions Management, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………………i

TABLE OF AUTHORITIES………………………………………………………………iii

MEMORANDUM OF LAW……………………………………………………………...1

INTRODUCTION………………………………………………………………………...1

BACKGROUND...………………………………………………………………………..2

ARGUMENT……………………………………………………………………………4

    A.  Legal Standard…………………………………………………………………...4

    B.  Plaintiffs Lack Standing to Sue For Injuries Based on Actions By Third
        Parties……………………………………………..…………………………………...5

    C.  Plaintiffs' Common Law Claims Are Time Barred…………………………..…………..7

    D.  The Complaint Fails to Sufficiently Allege the Causes of Action………………………10

        1.  Plaintiffs Fail to State a Claim For Civil Conspiracy……………………………10

        2.  Plaintiffs Fail to State a Claim For Conversion…………………………………12

        3.  Plaintiffs Fail to State a Claim For Tortious Interference With Contract……….13

        4.  Plaintiffs Fail to State a Claim For Tortious Interference
            With Economic Advantage……………………………………………………14

        5.  Plaintiffs Fail to State a Claim For Defamation…………………………………15

        6.  Plaintiffs Fail to State a Claim For False Light Invasion of Privacy……………17

        7.  Plaintiffs Fail to State a Claim For Libel………………………………………..17

        8.  Plaintiffs Fail to State a Claim For Violation of 18 U.S.C. §§ 1962(a) & (c)….18

                a. Plaintiffs Lack Standing to Sue Under the Racketeer Influenced
                  and Corrupt Organizations Act ("RICO")………………………………18

                b. Plaintiffs Fail to Establish a "Pattern" of Racketeering Activity……….19

c. Plaintiffs Fail to Establish a RICO Enterprise…………………………22

d. Plaintiffs Fail to Establish Injuries Under 18 U.S.C. § 1962
"By Reason Of" the GlobalOptions Defendants Actions………………23

e. Plaintiffs Fail to Establish That the GlobalOptions Defendants
Conspired to Violate RICO……………………………………………24

E.  Plaintiffs Have Failed to Join the Republic of Kazakhstan and
President Nazarbayev Required Parties in the Action……………………….………...25

CONCLUSION ………………………………………………………………………30

CERTIFICATE OF SERVICE..............................................................................31

# TABLE OF AUTHORITIES

## CASES

*Alcan Aluminum, Ltd. v. Franchise Tax Bd.*,
  558 F. Supp. 624, 627 (S.D.N.Y. 1983)……………………………………............6

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)…………………………………………………………..4, 13, 16, 22

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)……………………………………………………...…..23, 24

*Beck v. Prupis*,
  529 U.S. 494 (2000)………………………………………………………………..24

*Beeton v. District of Columbia*,
  779 A.2d 918 (D.C. 2001)………………………………………………………15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)…………..…………………….......................4, 12, 13, 14, 15, 16

*Bennett Enterprise, Inc. v. Domino's Pizza, Inc.*,
  45 F.3d 493 (D.C. Cir. 1995)………………………………………………13, 14, 15

*Bixler v. Foster*,
  596 F. 3d 751 (19th Cir. 2010)…………………………………………………..19

*Blackhawk Heating & Plumbing Co. v. Driver*,
  433 F.2d 1137 (D.C. Cir. 1970)……………………………………………………6

*Blodgett v. Univ. Club*,
  930 A.2d 210 (D.C. 2007)……………………………………………………17

*Brady v. Livingood*,
  360 F. Supp. 2d 94 (D.D.C. 2004)…………………………………………………10

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2005)…………………………………………………...13

*Byrd v. Envtl. Prot. Agency*,
  174 F.3d 239 (D.C. Cir. 1999)…………………………………………………..23

*Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*,
  834 A.2d 77, 83 (D.C. 2003)……………………………………………………13

*Cheeks v. Fort Myer Constr. Co.*,
  2010 U.S. Dist. LEXIS 63118 (D.D.C. 2010)……………………………………… 6

*Century Int'l Arms, Ltd. v. Fed. State Unirary Enter. State Corp.*,
        172 F. Supp. 2d 79 (D.D.C. 2001)……………………………………………………27

*Citizen Potawatomi Nation v. Salazar*,
        624 F. Supp. 2d 103 (D.D.C. 2009)………………………………………………...25, 27

*Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*,
        699 F.2d 1274 (D.C. Cir. 1983)……………………………………………………...5

*Confederate Memorial Ass'n v. Hines*,
        995 F.2d 295 (D.C. Cir. 1993)………………………………………………………..22

*Corsi v. Eagle Publ'g, Inc.*,
        2008 U.S. Dist. LEXIS 6257 (D.D.C. 2008)……………………………………………5, 26

*Crowley v. North Am. Telcoms. Ass'n*,
        691 A.2d 1169 (D.C. 1997)…………………………………………………………..15

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
        941 F.2d 1220 (D.C. Cir. 1991)……………………………………………………23, 24

*Dubois v. Wash. Mut. Bank*,
        2010 U.S. Dist. LEXIS 91855 (D.D.C. 2010)……………………………………………8

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
        48 F.3d 1260 (D.C. Cir. 1995)………………………………………………………20, 21

*Edmonds v. United States*,
        563 F. Supp. 2d 196 (D.D.C. 2008)………………………………………………..12

*Erie Railroad Co. v. Tompkins*,
        304 U.S. 64 (1938)…………………………………………………………………...8

*Fed. Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.*,
        267 F. Supp. 2d 87 (D.D.C. 2003)………………………………………………………12

*Forte v. Goldstein, et al.*,
        461 A.2d 469, 472 (D.C. 1983)………………………………………………………8

*Franchise Tax Bd. Of Calif. V. Alcan Aluminum Ltd.*,
        493 U.S. 331 (1990)…………………………………………………………………19

*Genetic Sys. Corp. v. Abbott Labs*,
        691 F. Supp. 407 (D.D.C. 1988)……………………………………………………14

*Gill & Duffus Services, Inc. v. A.M. Nural Islam*,
        675 F.2d 404 (D.C. Cir. 1982)………………………………………………………26

*Habib v. Raytheon Co.*,
        616 F.2d 1204 (D.C. Cir. 1980)…………………………………………………….8

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983)……………………………………………………10, 25

*Harpole Architects, P.C. v. Barlow*,
    668 F. Supp. 2d 68 (D.D.C. 2009)……………………………………………………..6

*Hinson ex rel N.H. v. Merritt Educational Ctr.*,
    521 F. Supp. 2d 22 (D.D.C. 2007)…..…………………………...…………………….4

*H.J. Inc. v. N.W. Bell Tel. Co.*,
    492 U.S. 229 (1989)…………………………………………………………………20, 21

*Jankovic v. Int'l Crisis Group*,
    494 F.3d 1080 (D.C. Cir. 2007)…………………………………………………….9

*Jovanovic v. US-Algeria Bus. Council*,
    561 F. Supp. 2d 103 (D.D.C. 2008)………………………………….………………...7, 8

*Kehr Packages , Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991)………………………………………………………....21

*Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas v. Babbitt*,
    43 F.3d 1491 (D.C. Cir. 1995)…………………………………………………...…27

*Klayman v. Segal*,
    783 A.2d 607 (D.C. 2001)………………………………………………………….17, 18

*Kramer v. W. Pac. Indus., Inc.*,
    546 A.2d 348 (Del. 1988)…………………………………………………………...7

*Laufer v. Westminster Brokers, Ltd.*,
    532 A.2d 130 (D.C. 1987)…………………………………………………………..6

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002)…………………………………………………...17

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
    657 F. Supp. 2d 104 (D.D.C. 2009)………………………………………………….21

*Martens v. Barrett*,
    245 F.2d 844 (5th Cir. 1956)……………………………………………………..6

*McCreary v. Heath*,
    2005 WL 3276257 (D.D.C. 2005)…………………………………………………10, 12

*Messina v. Fontana*,
    260 F. Supp. 2d 173 (D.D.C 2003)……………………………………………….18

*Mittleman v. United States*,
   104 F.3d 410 (D.C. Cir. 1997)……………………………………………………9

*Mona v. Mona Elec. Group, Inc.*,
   934 A.2d 450 (Md. Ct. Spec. App. 2007)……………………………………………6

*Nader v. Democratic Nat'l Comm.*,
   567 F.3d 692 (D.C. Cir. 2009)……………………………………….................9

*Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*,
   357 F. Supp. 2d 287 (D.D.C. 2005)……………………………….……....7

*Nat'l R.R. Passenger Corp. v. Veolia Transp. Services, Inc.*,
   592 F. Supp. 2d 86, 99(D.D.C. 2009)…………………………………………13

*Ning Ye v. Holder*,
   644 F. Supp. 2d 112 (D.D.C. 2009)……………………………………………...16

*Paul v. Howard Univ.*,
   754 A.2d 297 (D.C. 2000)……………………………………………………..13

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*,
   924 F.2d 1114 (D.C. Cir. 1991)………………………………………………20

*Prins v. International Tel. and Tel. Corp.*,
   757 F. Supp. 87 (D.C. 1991)…………………………………………………15

*Republic of the Philippines v. Pimentel*,
   553 U.S. 851, 865 (2008)……………………………………………...27, 28, 29

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480 (D.C. Cir. 1989)……………………………….………………10

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985)……………………………………………………...18

*United States v. Palmer*,
   578 F.2d 144 (5th Cr. 1978)……………..……………………………………...6

*Usher v. 1015 N Street, N.W. Cooperative Assoc.*,
   120 A.2d 921 (Mun. Ct. App. D.C. 1956)………………………………………27

*Vreven v. Am. Ass'n of Retired Pers.*,
   604 F. Supp. 2d 9 (D.D.C. 2009)………………………………………15, 16

*Warth v. Seldin*,
   422 U.S. 490 (1975)………………………………………………..……19

*W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001)……………………………………………………20, 21

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
    788 F.2d 765 (D.C. Cir. 1986)……………………………………………………….27

*Wolf v. Regardie*,
    553 A.2d 1213 (D.C. 1989)……………………………………………………………17

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union*,
    839 F.2d 782 (D.C. Cir. 1988)…………………………………………...…...…22

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6)…..……………………………………………………1, 4, 5, 6, 7

Fed. R. Civ. P. 12(b)(7)…………………………………………………………5, 25, 30

Fed. R. Civ. P. 19…………………………………………………………………5, 25

Fed. R. Civ. P. 19(a)………………………………………...…………………5,13, 25

Fed. R. Civ. P. 19(b)……………………………………..………………25, 26, 27, 28

28 U.S.C. § 1962……………………………………………...…………………18, 24

28 U.S.C. § 1962(a)…………………………………………….…………18, 19, 20, 22, 23, 24

28 U.S.C. § 1962(c)…………………………………………….…………18, 19, 20, 23, 24

28 U.S.C. § 1962(d)………………………………………………...……………………24

28 U.S.C. § 1964(c)……………………………………………...…………………18, 23

28 U.S.C. § 1961(4)……………………………………………………………………22

28 U.S.C. § 1961(5)……………………………………………………………………20

28 U.S.C. § 1330………………………………………………………………………27

28 U.S.C. § 1602-1611..………………………………………………………….…27

## MISCELLANEOUS

6 Moore's Federal Practice ¶ 56.02 (2d ed. 1966)……………………………………..…..6

## I.      **MEMORANDUM OF LAW**

Defendants GlobalOptions, Inc. ("GlobalOptions") and GlobalOptions Management, Inc.

("GlobalOptions Management") (collectively, the "GlobalOptions Defendants"), respectfully

submit this Joint Motion to Dismiss Plaintiffs' Complaint for Compensatory and Punitive

Damages (the "Joint Motion to Dismiss") with prejudice pursuant to Federal Rules of Civil

Procedure 12(b)(6) and (7).  In furtherance of the same, the GlobalOptions Defendants

respectfully state as follows:

## II.     **INTRODUCTION**

Plaintiffs Devincci Salah Hourani ("Devincci Hourani") and Issam Salah Hourani

("Issam Hourani") (collectively referred to as, "Plaintiffs") filed their Complaint ("Complaint")

(Docket Entry ("D.E") 1) against the GlobalOptions Defendants on September 23, 2010.  The

Complaint centers on allegations that the GlobalOptions Defendants engaged in a Washington-

based conspiracy with the Government of the Republic of Kazakhstan (the "Republic of

Kazakhstan") and its President Nursultan Nazarbayev ("President Nazarbayev") to expropriate

Plaintiffs' multi-billion dollar businesses and investments located in the Republic of Kazakhstan.

Plaintiffs claim that President Nazarbayev engaged in the practice of stealing the assets of

so-called "Oligarchs," including Plaintiffs, in order to eliminate them as potential political rivals.

*See Complaint* at 2.  In order to do this, the Complaint alleges that President Nazarbayev sought

the help of outside consultants, Alexander Mirtchev ("Mr. Mirtchev"), Krull Corporation

("Krull"), and the GlobalOptions Defendants (collectively, "Defendants").  *See id*.

According to the Complaint, Mr. Mirtchev, Krull, and the GlobalOptions Defendants

presented President Nazarbayev with "a detailed plan for consolidating power and enriching

himself at the expense of some of the Republic of Kazakhstan's most successful businessmen,

including the Plaintiffs."  *Id.* at 3.  The Complaint further alleges that once President Nazarbayev

1

approved the alleged plan, the Defendants "fully supported" and "assisted in its execution," making millions of dollars in profits derived from the seizure of Plaintiffs' assets.  *Id.* at 3. Among other things, Plaintiffs allege that the GlobalOptions Defendants worked in concert with the Republic of Kazakhstan to deprive Plaintiffs of their assets and ran a campaign to discredit and defame the Plaintiffs in Western media.  *See id.* at ¶¶ 131-132, 150-152.  As such, Plaintiffs seek an award of compensatory and punitive damages, plus attorney's fees.  However, aside from reading like a fiction novel, the Complaint is deficient on several levels and should be dismissed for the reasons explained below.

## III.    BACKGROUND

On April 28, 2010, Caratube International Oil Company ("Caratube") filed the *Petition of Caratube International Oil Company for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C.§ 1782* (the "Petition") (D.E. ("Petition D.E.") 1) in this Court, seeking an order requiring certain non-parties, including the GlobalOptions Defendants to produce discovery in Caratube's arbitration case.  Caratube filed the case captioned *Caratube International Oil Co. v. The Republic of Kazakhstan*, ICSID Case No. ARB/08/12 (the "ICSID Proceeding") pursuant to the United States—Kazakhstan Bilateral Investment Treaty in the World Bank's International Centre for the Settlement of Investment Disputes ("ICSID").  GlobalOptions filed its *Response in Opposition to Petition of Caratube International Oil Company for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782* (Petition D.E. 17) on June 4, 2010.  On June 11, 2010, Caratube filed its *Consolidated Response in Support of Caratube International Oil Company Petition for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782* (Petition D.E. 24).  On June 25, 2010, GlobalOptions filed *GlobalOptions, Inc.'s Reply in Opposition to the Consolidated Response in Support of Caratube International Oil Company Petition for*

2

*Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782* (Petition D.E. 26). This Court denied Caratube's Petition in an order dated August 11, 2010 (Petition D.E. 34).

As a result, Caratube filed its *Motion for Reconsideration* asking this Court to reconsider and vacate its August 11, 2010 order denying Caratube's Petition (Petition D.E. 37). In response, GlobalOptions filed *GlobalOptions, Inc.'s Memorandum in Opposition Caratube International Oil Company's Motion for Reconsideration* (Petition D.E. 38) on September 2, 2010. This Court ended Caratube's attempts to seek discovery from GlobalOptions in an order, dated September 22, 2010, denying Caratube's Motion for Reconsideration (Petition D.E. 43).

In a transparent act of retaliation, Plaintiffs, who include a shareholder of Caratube, instituted the instant action against the very same non-parties targeted in the Petition on September 23, 2010, **one day** after this Court denied the *Motion for Reconsideration*. Plaintiffs name the same non-parties and instances in their Complaint against Defendants that Caratube identified in the Petition. *See Petition* at 2-10. Specifically, Plaintiffs claim that the injuries from which their companies suffered were a direct result of the Republic of Kazakhstan's and the GlobalOptions Defendants actions. *See Petition* at 5 ("Kazakhstan has been actively aided in its efforts to harass Caratube and the Hourani family by certain entities and individuals in the United States and abroad."). "[GlobalOptions] has also long been associated with doing work for the Government of Kazakhstan, and in particular with the [Presidential] family." *Petition* at 7; *Complaint* at ¶ 16. The Petition and the Complaint clearly involve the same events, transactions, and alleged actors, and it is evident that the Complaint is a concealed second attempt to obtain documents from Defendants.

IV.   **ARGUMENT**

A.  **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a court may

dismiss a complaint if the complaint fails to state a cognizable claim.  *See* Fed. R. Civ. P.

12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief," in order to "give the

defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The Supreme Court

recently stated that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.

Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

Detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss.

However, in order to provide the grounds of entitlement to relief, the plaintiff must furnish more

than mere labels and conclusions or a "formulaic recitation of the elements of a cause of action."

*Hinson ex rel N.H. v. Merritt Educational Ctr*., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting

*Twombly*, 550 U.S. at 555).

In the instant case, Plaintiffs rely on statements that are "merely consistent with" the

Defendants liability and constitute inadequate "[t]hreadbare recitals of the elements of a cause of

action." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly*, 555 U.S. at 555); *see e.g. Complaint* at ¶¶

162-163, 175, 180-181, 188, 199-201, 208, 222-224).  The allegations Plaintiffs assert against

the GlobalOptions Defendants are nothing more than "labels and conclusions" and cannot

withstand a motion to dismiss.  *Iqbal,* 129 S. Ct. at 1949.

In the alternative, the Complaint must be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(7) ("Rule 12(b)(7)") for failure to join the Republic of Kazakhstan, a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure ("Rule 19").  Rule 19 mandates joinder of a party if the party meets the description of a necessary party under Rule 19(a) or dismissal of the suit in the absence of that party if the absent party is deemed indispensible under Rule 19(b).  *See Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*, 226 U. S. App. D.C. 122, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983).

Under Rule 19(a) a party is necessary if (1) complete relief cannot be accorded among those already parties, or (2) the absent party claims an interest relating to the subject of the action and is so situated that the disposition of the action the party's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  *See* Fed. R. Civ. P. 19(a); *see also Cloverleaf Standardbred Owners Ass'n, Inc.,* 699 F.2d at 1278-79.  Once a court determines that an absent party is necessary under Rule 19(a) criteria, the analysis must proceed to Rule 19(b) to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b); *see also Corsi v. Eagle Publ'g, Inc.*, 2008 U.S. Dist. LEXIS 6257 at *9 (D.D.C. 2008).

As more fully described below, the Republic of Kazakhstan and President Nazarbayev are necessary and indispensible parties under Rule 19 (a) and (b), respectively.  Therefore, Plaintiffs' failure to join the Republic of Kazakhstan and President Nazarbayev to this action is fatal and the Complaint must be dismissed pursuant to Rule 12(b)(7).

### B.  <u>Plaintiffs Lack Standing to Sue For Injuries Based on Actions by Third Parties</u>

A Rule 12(b)(6) motion raises "a defense in bar and involves the type of matter that is

within the province of the summary judgment procedure." *Blackhawk Heating & Plumbing Co. v. Driver*, 433 F.2d 1137, 1144 (D.C. Cir. 1970) (quoting 6 Moore's Federal Practice ¶ 56.02, at 2034 (2d ed. 1966)).  Plaintiffs' lack of standing goes to the merits of the controversy, and is a matter well suited for resolution in the context of the summary judgment procedure provided there are no genuine issues as to material facts.  *See id* at 1144-45.  As such, the defense of lack of standing may be raised in a Rule 12(b)(6) motion to dismiss.

It is well settled in case law that a corporation, and not its shareholders have standing to complain of an injury sustained by, or a wrong done to, the corporation.  *See Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 135 (D.C. 1987); *see also United States v. Palmer*, 578 F.2d 144, 145-146 (5th Cr. 1978).  Court hold that where a defendant's wrongful acts caused direct injury to the value of a corporation, the cause of action accrues with the corporation, not the shareholders, "even though in an economic sense real harm may well be sustained [by the shareholders] as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership."  *Alcan Aluminum, Ltd. v. Franchise Tax Bd.*, 558 F. Supp. 624, 627 (S.D.N.Y. 1983) (quoting *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir. 1956)).

To have standing under District of Columbia law, a shareholder "must identify a legal interest that has been directly or independently harmed, i.e., a 'special injury' that does not derive from the injury to the corporation."  *Cheeks v. Fort Myer Constr. Co.,* 2010 U.S. Dist. LEXIS 63118, *35 (D.D.C. 2010) (quoting *Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 77 (D.D.C. 2009)); *see also Mona v. Mona Elec. Group, Inc*., 176 Md. App. 672, 934 A.2d 450, 464 (Md. Ct. Spec. App. 2007) ("To maintain a direct action, [a] shareholder must allege that he has suffered 'an injury that is separate and distinct from any injury suffered either directly

by the corporation or derivatively by the stockholder because of the injury to the corporation.'"); *Kramer v. W. Pac. Indus., Inc*., 546 A.2d 348, 351 (Del. 1988) ("For a plaintiff to have standing to bring an individual action, he must be injured *directly* or *independently* of the corporation.").

In the instant case, the crux of Plaintiffs' Complaint surrounds the allegations that Defendants tortiously expropriated the assets of KTK Television, Alma Media, Caratube and Pharma Industry Corporation, LLC ("Pharma Industry").  Plaintiffs make several allegations that they were injured due to loss of income from these businesses.  *See Complaint* at ¶¶ 172-174,182, 188, 191, 194.  Therefore, to the extent the Defendants, including the GlobalOptions Defendants, are liable for the loss of corporate assets, that liability extends to the corporation and not the individual shareholders.  Plaintiffs fail to make any averment in the Complaint to establish that their injuries are personal and distinct from the injuries to these corporations. Plaintiffs support this notion by the very fact that they filed the ICSID Proceeding in Caratube's name and not the individual shareholder.

For these reasons, Plaintiffs have no standing to state a claim for relief based on any injuries stemming from the alleged expropriation of assets from KTK Television, Alma Media, Caratube, and Pharma Industry, including, but not limited to Plaintiffs' claim for conversion, tortious interference, and 18 U.S.C. §§1962(a) and (c) violations.

### C.  Plaintiffs' Common Law Claims Are Time Barred

 Statute of limitations defenses may be raised in a Rule 12(b)(6) motion.  *See Jovanovic v. US-Algeria Bus. Council,* 561 F. Supp. 2d 103, 111 (D.D.C. 2008); *see also Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005), *aff'd* 249 Fed. Appx. 832 (D.C. Cir. 2007) ("[a] defendant may raise the affirmative defense[] of a statute of limitation via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on

the face of the complaint").  "A federal court sitting in diversity must apply state law to the

substantive issues before it."  *Jovanovic*, 561 F. Supp. 2d at 111; *see Erie Railroad Co. v.*

*Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).  Since the statute of limitations for

a claim is considered a substantive issue, courts look to state law to determine whether a

plaintiff's claims are time barred.  *See id.*

 The statute of limitations governing a claim for conversion is three (3) years.  *See* D.C.

Code § 12-301 (1973); *see also Forte v. Goldstein, et al.*, 461 A.2d 469, 472 (D.C. 1983).  In this

case, Plaintiffs claim for conversion is based on the alleged seizure of KTK Television, Alma

Media and Caratube.  *See Complaint* at ¶¶ 172-175.  Although the Caratube contract was

terminated in February 2008, the alleged seizures of KTK Television and Alma Media occurred

in July 2007, three (3) years prior to Plaintiffs filing this Complaint.  *See id.* at ¶¶ 126, 129.

Therefore, any claim for conversion predicated on the seizures of KTK Television and Alma

Media is time barred.

 A three (3) year statute of limitations also bars all claims involving tortious interference

and civil conspiracy.  *See* D.C. Code § 12-301(8); *see also Habib v. Raytheon Co.*, 616 F.2d

1204, 1208 (D.C. Cir. 1980); *Dubois v. Wash. Mut. Bank*, 2010 U.S. Dist. LEXIS 91855, *11

(D.D.C. 2010).  Plaintiffs claim for tortious interference with economic advantage is based on

the alleged seizures of KTK Television, Alma Media and Pharma Industry.  As stated above, the

seizures of KTK Television and Alma Media occurred in July 2007.  Plaintiffs fail to provide

any date for the alleged "bankruptcy" of Pharma Industry.  Notwithstanding, any injury based on

the seizures of KTK Television and Alma Media occurred in 2007, the date after which Plaintiffs

no longer received profits from these companies.  *See Complaint* at ¶¶ 188, 194; s*ee also Habib*,

616 F.2d at 1208 (ruling that the statute begins to run from the time injury resulted from the

harmful acts).  As such, Plaintiffs claim for tortious interference with economic advantage

predicated on the alleged seizures of KTK Television and Alma Media is time barred.

The District of Columbia has a one (1) year statute of limitations on defamation and libel

claims.  Although there is no time period stated in District of Columbia law for false light claims,

"[where] a stated cause of action is 'intertwined' with one for which a limitations period is

prescribed, [courts operating under District of Columbia law] apply the specifically stated

period."  *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (quoting

*Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997)).   In support of their claims for

defamation, libel and false light, Plaintiffs list five (5) allegedly false statements.  *See Complaint*

at ¶¶ 199, 207, 214.  Plaintiffs allege that these statements were published in two articles on the

Kazakh Embassy Website (December 18, 2008 and February 9, 2009, respectively).  *See id.* at ¶¶

150-151 & n.26-27.  Plaintiffs also allege that these statements were published in various other

sources, including a Forbes.com article published February 9, 2009, the alleged "Aliyev Dossier"

published on or before July 15, 2009, and Interpol notices published on June 9, 2007 (article was

"reissued" on October 22, 2008 and in September 2009).  *See id.* at ¶¶ 119, 152 & n.28, 153-154.

However, Plaintiffs filed their Complaint September 23, 2010, more than a year after the alleged

publications.  As such, Plaintiffs claims based on any false statements are time barred.

Finally, for the purposes of this case, Plaintiffs' civil conspiracy claim is also

significantly time barred.  "Because its only purpose is to spread liability for a successful tort

claim to all agreeing parties . . ., a civil conspiracy claim not only incorporates every substantive

element of the underlying tort, but also its statute of limitations."  *Nader v. Democratic Nat'l*

*Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009).  Therefore, the very statute of limitations that bar

any of the tortious acts claimed in the Complaint also bar Plaintiffs' civil conspiracy claim.

### D.  **The Complaint Fails to Sufficiently Allege the Causes of Action**

#### 1.  **Plaintiffs Fail to State a Claim For Civil Conspiracy**

The Complaint's first claim for relief alleges civil conspiracy.  Civil Conspiracy is "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  Civil conspiracy is not actionable in and of itself, but, serves instead "as a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it, where the requisite agreement exists among them." *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989).

To survive a motion to dismiss, conclusory allegations of an agreement will not suffice. *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (the mere allegation that defendants "agreed among themselves" to subject plaintiff to discriminatory acts, without alleging facts suggesting that the defendants were acting in concert in furtherance of a shared goal of discriminating against him was not sufficient to establish civil conspiracy); *see also McCreary v. Heath*, 2005 WL 3276257, at *5 (D.D.C. 2005) (dismissing conspiracy claim where the "complaint fail[ed] to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants . . .").

In the instant case, Plaintiffs only state conclusory allegations that the GlobalOptions Defendants conspired to "consolidate all economic and political power in the hands of President Nazarbayev." *Complaint* at ¶ 45-55.   In the Complaint, Plaintiffs refer to, but fail to attach a memorandum (the "Superkahn Memorandum") that Mirtchev and GlobalOptions Management

allegedly drafted and presented to President Nazarbayev.  *See id* at ¶ 46.  The Superkahn

Memorandum allegedly details a plan to (1) eliminate President Nazarbayev's political rivals,

including Plaintiffs and other leaders of finance and industry ("Other Leaders"), (2) seize major

economic assets of Plaintiffs and Other Leaders, (3) discredit Plaintiffs and Other Leaders in

articles circulated in the Republic of Kazakhstan and the West, and (4) "softe[n] Kazakhstan's

image in the West through the promotion of Nazarbayev as a benevolent ruler. . .," what

Plaintiffs refer to as the Superkahn project.  *See id.* at ¶¶ 44-45.  However, the Complaint never

cites any specific language from the Superkahn Memorandum that would substantiate Plaintiffs'

claims that the GlobalOptions Defendants agreed to assist President Nazarbayev in any unlawful

act or to carry out any lawful act in an unlawful manner.  Plaintiffs' Compliant simply

paraphrases the alleged Superkahn Memorandum, and without putting forth any factual

evidence, deems it to be the alleged plan between Defendants and President Nazarbayev.

Additionally, Plaintiffs' allegations for conspiracy are against the "Corporate

Defendants," which is defined in the Complaint to include Krull.  *See id.* at ¶ 162.  As such,

Plaintiffs' do not specifically allege any facts against the GlobalOptions Defendants which

support a claim for conspiracy.  Plaintiffs allegations against the GlobalOptions Defendants are

rooted in baseless insinuations that the Republic of Kazakhstan acted out its investigations and

seizures of Plaintiffs' assets in furtherance of a purported scheme of GlobalOptions

Management's alleged Superkahn Memorandum.  Plaintiffs attempt to create a causal connection

between the alleged Superkahn Memorandum and a second memorandum drafted by

Kazakhstan's Prosecutor General, A. Daulbayev, summarizing alleged actions the Republic of

Kazakhstan took against Plaintiffs.  *See id.* at ¶¶ 133-138.  Plaintiffs cite to and interpret self-

serving quotes from the Prosecutor General's memorandum in a light favorable to their position,

and attempt to pass off their conclusions as factual evidence that the GlobalOptions Defendants intended and agreed to carry out the described events to Plaintiffs' detriment.  *See id.* at ¶ 144. However, this attempt fails to establish any direct evidence to factually link the GlobalOptions Defendants to any agreement to take part in any wrongdoing, and only amounts to a conclusory allegation of conspiracy which cannot survive a motion to dismiss.  *See McCreary*, 2005 WL 3276257, at *5.  As such, Plaintiffs' first claim for relief must be dismissed.

### 2.  Plaintiffs Fail to State a Claim For Conversion

The Complaint's second claim for relief alleges conversion.  Under District of Columbia law, conversion is defined as the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  *Edmonds v. United States*, 563 F. Supp. 2d 196, 202 (D.D.C. 2008) (quoting *Fed. Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 92 (D.D.C. 2003)).

Plaintiffs do not plead sufficient facts to establish that the GlobalOptions Defendants are liable for conversion.  The Complaint does not come close to alleging that the GlobalOptions Defendants intended to exercise dominion or control over Plaintiffs' assets.  Each allegation for conversion begins with the assertion that Mr. Mirtchev acted in concert with the Republic of Kazakhstan to take unlawful ownership, dominion, or control over Plaintiffs' interest in KTK Television, Alma Media and Caratube.  *See id.* at ¶¶ 172-174.  As such, the GlobalOptions Defendants did not actively participate in any unlawful ownership, dominion, or control over Plaintiffs' assets.  Therefore, these allegations fall short of establishing intent beyond mere speculation and are insufficient grounds for Plaintiffs' request for relief.  *See Twombly*, 550 U.S. at 544-545.  Therefore, Plaintiffs' second claim for relief must be dismissed.

### 3. <u>Plaintiffs Fail to State a Claim For Tortious Interference With Contract</u>

The Complaint's third claim for relief alleges tortious interference with contract.  In the District of Columbia, a tortious interference with contract claim has four required elements: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000)).

Plaintiffs attempt to establish a claim for tortious interference with contract against the GlobalOptions Defendants by stating that the "Corporate Defendants advised and assisted President Nazarbayev and the Republic of Kazakhstan in their efforts to unlawfully terminate and breach the Caratube oil concession contract. . ." *See Complaint* at ¶ 181.  However, the Complaint fails to allege facts sufficient on their face to make it plausible that the GlobalOptions Defendants specifically intended to interfere with Caratube's oil contract.  *See Iqbal*, 129 S. Ct. at 1949 (complaints must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face.").  A plaintiff must plausibly allege that a purported interferer knew of the contract.  *See, e.g., Bennett Enterprise, Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).  Knowledge of the contract may be established by allegations of the "interferer's conduct or spiteful or threatening words." *Nat'l R.R. Passenger Corp. v. Veolia Transp. Services, Inc.*, 592 F. Supp. 2d 86, 99(D.D.C. 2009); *Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2005).  However, Plaintiffs merely furnish the conclusory allegations, based upon "information and belief," that the GlobalOptions Defendants knew of Plaintiffs' contract and were part of an intricate conspiracy to undermine Plaintiffs and steal their assets.  *See Complaint* at ¶ 180.  Unfortunately, these allegations are not sufficient to establish a claim under *Twombly*.

*See Twombly,* 550 U.S. at 544-545.  Therefore, Plaintiffs' third claim for relief must be dismissed.

### 4.   Plaintiffs Fail to State a Claim For Tortious Interference With Economic Advantage

The Complaint's fourth claim for relief alleges tortious interference with economic advantage.  Tortious interference with economic advantage under District of Columbia law must show: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage. *See Bennett Enterprises, Inc.*, 45 F.3d at 499.   The same arguments stated above relating to knowledge apply here.  With respect to the third element of intentional interference, "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability."  *Id.* (quoting *Genetic Sys. Corp. v. Abbott Labs*, 691 F. Supp. 407, 423 (D.D.C. 1988)).  Rather, a plaintiff is required to plead "a 'strong showing of intent' to disrupt ongoing business relationships."  *Id.*

In the instant case, Plaintiffs have not pled a "strong showing of intent" to interfere with Plaintiffs' business relationships.  Plaintiffs do not allege any facts beyond the conclusory statement that the GlobalOptions Defendants, intentionally aided and advised President Nazarbayev, Dariga Nazarbayev, and the Republic of Kazakhstan in forcing Plaintiffs to assign their interest in KTK Television, Alma Media and Pharma Industry to President Nazarbayev. *See Complaint* at ¶¶ 188, 191, 194.  Plaintiffs further attempt to establish the GlobalOptions Defendants' intent by making the same wild accusation that Mr. Mirtchev's and GlobalOptions Management's alleged Superkahn Memorandum was an agreement to aid and advise President Nazarbayev in his alleged illegal acts against Plaintiffs, including terminating Plaintiffs' business

14

relationships.  *See id.* at ¶¶ 187, 188, 190, 191, 193, 194.  These allegations provide nothing more than speculation of the GlobalOptions Defendants' intent to disturb Plaintiffs' economic advantages and do not establish a strong showing of intent to support a claim for tortious interference.  *See Bennett Enterprise*s*, Inc.*, 45 F.3d at 499.   As such, the fourth claim for relief must be dismissed.

### 5.   Plaintiffs Fail to State a Claim For Defamation

The Complaint's fifth claim for relief alleges defamation.  In order to plead defamation in the District of Columbia a plaintiff must allege that (i) a false and defamatory statement was made by the defendant about the plaintiff; (ii) the defendant published it without privilege to a third party; (iii) the defendant exhibited some fault in publishing the statement; and (iv) the statement is actionable as a matter of law or the publication has caused the plaintiff special harm.  *See Crowley v. North Am. Telcoms. Ass'n*, 691 A.2d 1169, 1173 (D.C. 1997) (quoting *Prins v. International Tel. and Tel. Corp.*, 757 F. Supp. 87, 90 (D.C. 1991)).  "In the District of Columbia, a statement is defamatory if it tends to injure [the] plaintiff in his [or her] trade, profession or community standing or lower him in the estimation of the community."  *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001).  Moreover, to satisfy federal pleading standards in light of *Twombly*, a plaintiff must "adequately identif[y] third parties, or 'listeners,' with sufficient specificity to enable the defendant to answer the complaint."  *Vreven v. Am. Ass'n of Retired Pers.*, 604 F. Supp. 2d 9, 15 (D.D.C. 2009).

Plaintiffs neither allege whether the GlobalOptions Defendants, in particular, made any of the false or defamatory statements nor do Plaintiffs state whether the GlobalOptions Defendants published the alleged defamatory statements.  Each of the articles Plaintiffs refer to in the Complaint contain statements made by either government officials or other third parties.

*See Complaint* at ¶¶ 150-151 & n. 26-27.  The Complaint discusses an e-mail message, dated July 15, 2009, from the Eurasian Transition Group ("ETG") to Mr. Mirtchev regarding "The Aliyev Dossier."  *See id.* at ¶ 154.  Plaintiffs allege that this e-mail establishes the fact that the GlobalOptions Defendants supplied ETG with the defamatory statements.  However, the Plaintiffs do not allege that the defamatory statements were contained in the July 15, 2009 e-mail or any other e-mails between ETG and the GlobalOptions Defendants.  Additionally, Plaintiffs do not allege that the GlobalOptions Defendants either published or exhibited any fault in publishing the alleged false statements.  The July 15, 2009 e-mail does not establish that the GlobalOptions Defendants caused ETG to publish the statements.  Therefore, Plaintiffs have not established that the GlobalOptions Defendants made, published or caused the publication of the false or defamatory statements.

Additionally, Plaintiffs do not establish that the statements are false.  *See id.* at ¶¶ 150, 151, 199.  The Complaint merely labels the statements as false without challenging the accuracy of the statements.  Therefore, the allegations are nothing more than "'naked assertion[s]' devoid of 'further factual enhancement'" and cannot be presumed true.  *Ning Ye v. Holder*, 644 F. Supp. 2d 112, 115 (D.D.C. 2009) (quoting *Iqbal,* 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557).

Finally, Plaintiffs do not factually allege that they have been damaged by any of the alleged statements.  Instead, Plaintiffs ask this Court to make the assumption that Plaintiffs suffered special harm based on the public's perception of terrorism in the years since the events of September 11, 2001.  However, this allegation on its own does not sustain a defamation claim against the GlobalOptions Defendants because it does not identify the recipients of the GlobalOptions Defendants' alleged publication.  *Vreven*, 604 F. Supp. 2d at 15.

16

For the foregoing reasons, Plaintiffs have not established a claim for defamation.

Therefore, the fifth claim for relief must be dismissed.

**6.   Plaintiffs Fail to State a Claim For False Light Invasion of Privacy**

The Complaint's sixth claim for relief alleges that in the alternative of the defamation

claim, the Defendants committed the tort of false light invasion of privacy.  The courts are clear

that, "a plaintiff may not avoid the strictures of the burdens of proof associated with defamation

by resorting to a claim of false light."  *Klayman v. Segal,* 783 A.2d 607, 619 (D.C. 2001).  In

order to prevail on a claim for false light invasion of privacy, plaintiff must show: "(1) publicity

(2) about a false statement, representation or imputation (3) understood to be of and concerning

the plaintiff, and (4) which places the plaintiff in a false light that would be highly offensive to a

reasonable person."  *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 40 (D.D.C. 2002).  These

elements are similar to those of a defamation claim, and where a plaintiff brings defamation and

false light claims based on the same underlying allegations, "the claims will be analyzed in the

same manner."  *Blodgett v. Univ. Club,* 930 A.2d 210, 222-23 (D.C. 2007).  "Failure to establish

any one of these elements will defeat a plaintiff's cause of action."  *Wolf v. Regardie*, 553 A.2d

1213, 1220 (D.C. 1989).

As discussed above, Plaintiffs have not established that the alleged defamatory statements

are false.  The same analysis equally applies to Plaintiffs' invasion of privacy claims.  *See*

*Blodgett*, 930 A.2d at 223.  Therefore, under *Wolf*, this Joint Motion to Dismiss need not go

through each of the remaining three (3) elements.  As such, the sixth cause action must be

dismissed.

**7.   Plaintiffs Fail to State a Claim For Libel**

The Complaint's seventh claim for relief alleges libel.  Under D.C. law, to establish a

cause of action for libel, a plaintiff must show that "(i) a false and defamatory statement was written by the defendant about the plaintiff; (ii) the defendant published it without privilege to a third party; (iii) the defendant exhibited some fault in publishing the statement; and (iv) the statement is actionable as a matter of law or the publication has caused the plaintiff special harm." *Messina v. Fontana*, 260 F. Supp. 2d 173, 176-77 (D.D.C 2003) (quoting *Beeton*, 779 A.2d at 923; *Klayman*, 783 A.2d at 612).

As argued above, Plaintiffs have neither established that the GlobalOptions Defendants made any false statements nor have they established that the GlobalOptions Defendants wrote or cause any false statements to be published.  Therefore, Plaintiffs have failed to state a claim for libel and the seventh cause of action must be dismissed.

### 8.  **Plaintiffs Fail to State a Claim For Violation of 18 U.S.C. §§ 1962(a) & (c)**

#### a.  **Plaintiffs Lack Standing to Sue Under the Racketeer Influenced and Corrupt Organizations Act ("RICO")**

The Complaint's eighth claim for relief alleges violations of 18 U.S.C. § 1962 or RICO. RICO creates a cause of action for "any person injured in his business or property by reason of a violation of § 1962."  18 U.S.C. § 1964(c).  As such, Plaintiffs must first plead that the GlobalOptions Defendants violated § 1962 by alleging sufficient facts indicating that the defendant engaged in a "pattern" of racketeering activity.  18 U.S.C. § 1962(c).  Once Plaintiffs establish that the GlobalOptions Defendants have violated § 1962, Plaintiffs must plead that they were "injured in [their] business or property *by reason of* a violation of § 1962."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (emphasis added) (citing 18 U.S.C. § 1964(c)).  Injury to a person's business or property is a requirement for a civil plaintiff to demonstrate standing.  *See id.* at 496.

As established above, in general, the law is that conduct which harms a corporation confers standing on the corporation, and not its shareholders.  *See Franchise Tax Bd. Of Calif. V. Alcan Aluminum Ltd.*, 493 U.S. 331, 336, 110 S. Ct. 661, 107 L. Ed. 2d 696 (1990); *see also Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010).  Shareholders will only "suffer injury in the Article III sense when the corporation incurs significant harm, reducing the return on their investment and lowering the value of their stockholdings."  *Id.* at 335-336.  However, a shareholder must meet the "prudential requirements of the standing doctrine."  *Id.* at 336.  One such requirement, is that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties," namely the corporation.  *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

These Plaintiffs allege that they suffered a lost in interest of their business holdings, namely profits they realized from KTK Television, Alma Media, Caratube and Pharma Industry. However, such injury is not direct and personal for RICO purposes, but rather an injury to the corporation.  As such, Plaintiffs claims are derivative to the corporations' and Plaintiffs lack the standing to sue under the civil RICO statute for alleged injuries to their corporations.

### b.  **Plaintiffs Fail to Establish a "Pattern" of Racketeering Activity**

Notwithstanding the fact that Plaintiffs lack standing to state a cause of action pursuant to RICO, Plaintiffs fail to sufficiently state a RICO claim warranting dismissal.  Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(a) and (c).  To state a claim for under 18 U.S.C. § 1962(a), Plaintiffs must allege that the GlobalOptions Defendants "received . . .income derived, directly or indirectly, from a pattern of racketeering activity" and "use[d] or invest[ed], directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the established or operation of, any enterprise which is engaged in, or the activities

of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(a).  To state a claim pursuant

to 18 U.S.C. § 1962(c), Plaintiffs must establish four elements: "'(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity.'"  *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs*.,

235 F.3d 629, 633 (D.C. Cir. 2001) (quoting *Pyramid Sec. Ltd. v. IB Resolution, Inc*., 924 F.2d

1114, 1117 (D.C. Cir. 1991)).

Under either subsection, a plaintiff must plead sufficient facts indicating that the

defendant engaged in a "pattern" of racketeering activity.  *See* 18 U.S.C. § 1962(c).  To establish

a "pattern" under RICO, there must be at least two predicate acts of racketeering activity that

have occurred within ten years of each other.  18 U.S.C. § 1961(5).  In addition, the Supreme

Court has required plaintiffs to allege a "relationship" between the predicate acts (the

"relationship requirement") as well as a "threat of continuing activity" (the "continuity

requirement") to illustrate a "pattern of racketeering activity."  *See H.J. Inc. v. N.W. Bell Tel. Co*.,

492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

The "relationship requirement" requires "criminal acts that have the same or similar

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated

by distinguishing characteristics and are not isolated events."  *N.W. Bell Tel. Co.*, 492 U.S. at 240

(quoting 18 U.S.C. § 3575(e)).  The "continuity requirement" mandates that "the predicates

themselves amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity."

*Id.*  (emphasis in original).  "The Court said that the [continuity] concept . . . refers 'either to a

closed period of repeated conduct, or to past conduct that by its nature projects into the future

with a threat of repetition.'"  *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d

1260, 1264 (D.C. Cir. 1995) (quoting *N.W. Bell Tel. Co.*, 492 U.S. at 242).

The Complaint does not allege sufficient facts to establish that the GlobalOptions

Defendants actions constituted a "pattern" of racketeering activity.  In particular, Plaintiffs have

failed to establish the continuity element for a "pattern" of racketeering activity.  This Circuit has

adopted the Third Circuit's test to determine whether the closed-ended continuity requirement

has been established.  *See Edmondson & Gallagher*, 48 F.3d at 1265.  The factors to be

considered are "the number of unlawful acts, the length of time over which the acts were

committed, the similarity of the acts, the number of victims, the number of perpetrators, and the

character of the unlawful activity."  *Lopez v. Council on Am.-Islamic Relations Action Network,*

*Inc.*, 657 F. Supp. 2d 104, 111(D.D.C. 2009) (quoting *Kehr Packages , Inc. v. Fidelcor, Inc.*, 926

F.2d 1406, 1412-13 (3d Cir. 1991)).  These factors should be applied in a common sense manner.

*See W. Assocs. Ltd. P'ship,* 235 F.3d at 637.

The Supreme Court suggests that a plaintiff show "that the predicate [offenses] are a

regular way of conducting the defendants' ongoing legitimate business."  *N.W. Bell Tel. Co.*, 492

U.S. at 243.  This concept establishes that the defendants conduct will repeat and continue into

the future.  *See id.* at 240-43.  Plaintiffs do not describe the GlobalOptions Defendants as

conducting their ongoing business in a manner established by the alleged predicate offenses.

Aside from the earlier accusations that the Superkhan Memorandum was an alleged plan to

eliminate President Nazarbayev's political rivals, including Plaintiffs and Other Leaders,

Plaintiffs do little to address the continuity factor.  Plaintiffs describe the GlobalOptions

Defendants' alleged RICO violations as commencing in "2007 [or] perhaps earlier."  *Complaint*

at ¶ 222.  The fact that the Plaintiffs allege the scheme began in 2007 does not act to bolster their

allegations with respect to the closed-ended continuity requirement.  *See W. Assocs. Ltd. P'ship*,

235 F.3d at 636.  The Circuit Court in *Western Associates Ltd. Partnership*, noted that "an eight-

year time period, though highly relevant, is not dispositive." *Id.*  Moreover, Plaintiffs still only

allege one scheme as described in the alleged Superkahn Memorandum.  *See generally Complaint.*  As such, Plaintiffs have failed to adequately plead facts sufficient to indicate that the GlobalOptions Defendants engaged in a "pattern" of racketeering activity and establish that the GlobalOptions Defendants violated RICO.

### c.  <u>Plaintiffs Fail to Establish a RICO Enterprise</u>

A RICO "enterprise" is any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  In the Complaint, Plaintiffs claim that the "oilfields in Kazakhstan and/or Uzbekistan," and the GlobalOptions Defendants' consulting business are the RICO "enterprises" upon which Plaintiffs base their § 1962(a) claim.  *See Complaint*  at ¶ 222.  However, the Complaint does not allege that the GlobalOptions Defendants used any proceeds of a racketeering activity to invest in or acquire any interest in the supposed oil fields.  Plaintiffs only jump to the conclusion "upon information and belief" that the GlobalOptions Defendants have a financial interest in the oil fields in the Republic of Kazakhstan and Uzbekistan.  *See id.* at ¶ 93. As such, these allegations are factually insufficient to establish a RICO enterprise or a claim under § 1962(a).  *See Iqbal,* 129 S. Ct. at 1949.  Additionally, the Plaintiffs' claim that the GlobalOptions Defendants were funded by proceeds of a racketeering activity is equally insufficient to support a claim under § 1962(a) or establish a RICO enterprise.  Courts have established that a defendant in a RICO action cannot be both the RICO enterprise and the RICO defendant.  *See Confederate Memorial Ass'n v. Hines,* 995 F.2d 295, 300 (D.C. Cir. 1993); *see also Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union*, 839 F.2d 782, 790 (D.C. Cir. 1988) (holding that "one entity may not serve as the enterprise and the person associated with it") *vac't in part on other grounds*, 913 F.2d 948 (D.C. Cir. 1990) (en banc), *cert.*

*denied*, 111 S. Ct. 2839, 115 L. Ed. 2d 1007 (1991).

In support of their § 1962(c) claim, Plaintiffs allege that the GlobalOptions Defendants employ Mr. Mirtchev and "are engaged in an enterprise that impacts foreign and interstate commerce." *Complaint* at ¶ 223. Similar to the argument in their § 1962(a) claim, Plaintiffs base the RICO enterprise on the GlobalOptions Defendants' international consulting services. *See id.* However, as established above, the GlobalOptions Defendants cannot be both the RICO enterprise and the RICO defendant. *See Confederate Memorial Ass'n*, 995 F.2d at 300. In conclusion, Plaintiffs have utterly failed to establish the existence of a RICO enterprise upon which to base their RICO claims.

### d. Plaintiffs Fail to Establish Injuries Under 18 U.S.C. § 1962 "By Reason Of" the GlobalOptions Defendants Actions

Notwithstanding that Plaintiffs failed to establish that the GlobalOptions Defendants engaged in a "pattern" of racketeering activity, Plaintiffs claim that they suffered monetary losses because of the GlobalOptions Defendants' actions. 18 U.S.C. § 1964(c) authorizes recovery for an injury suffered "by reason of" a RICO violation. "A claim is cognizable under § 1964(c) only if the defendant's alleged violation proximately caused the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462 (2006). The injury claimed by a plaintiff must be concrete and actual or imminent, not conjectural or hypothetical. *See Byrd v. Envtl. Prot. Agency,* 174 F.3d 239, 243 (D.C. Cir. 1999).

Plaintiffs state that they suffered financial injuries when Mr. Mirtchev and the GlobalOptions Defendants violated 18 U.S.C. § 1962(a). "[A] plaintiff claiming under § 1962(a) must plead and prove that his injury flowed from the defendant's use or investment of racketeering income." *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) (dismissing claim under § 1962(a) where plaintiff merely alleged injury

stemming from the predicate acts).  "It is not sufficient to allege injury flowing from the

predicate acts of racketeering."  *Id.*  Plaintiffs never pled that the GlobalOptions Defendants

invested or used any funds obtained through the alleged unlawful activities.  *See Complaint* at ¶

222.   Plaintiffs only allege that they suffered a monetary loss when the GlobalOptions

Defendants allegedly assisted and aided President Nazarbayev and the Republic of Kazakhstan in

acts of extortion and robbery, the alleged predicate acts.  *See id.* at ¶ 222.  Thus, the injury is a

direct result of the predicate acts and not the GlobalOptions Defendants alleged investment or

use of the Plaintiffs' assets.  Therefore, Plaintiffs fail to establish that Plaintiffs' financial harm

"flowed from the defendant's use or investment of racketeering income" and have not

established special injury under § 1962(a).  *Danielsen*, 941 F.2d at 1229.

Plaintiffs further allege that they suffered monetary losses because of the GlobalOptions

Defendants violation of § 1962(c).  As such, Plaintiffs must allege that the GlobalOptions

Defendants' acts were the proximate cause of their injury.  *See Anza,* 547 U.S. at 462.  In this

case, Plaintiffs have not sufficiently alleged that the GlobalOptions Defendants actually

committed any of the acts stated in their Complaint.  Therefore, Plaintiffs cannot establish that

the GlobalOptions Defendants are the proximate cause for Plaintiffs' monetary losses.  *See* 18

U.S.C. § 1964(c).

### e.  Plaintiffs Fail to Establish That the GlobalOptions Defendants Conspired to Violate RICO

Plaintiffs also allege that Defendants conspired to violate RICO.  A person commits

conspiracy to violate RICO if he or she "conspire[s] to violate any of the provisions of

subsection (a), (b), or (c) of [18 U.S.C. § 1962]." 18 U.S.C § 1962(d).  The principals of civil

conspiracy, stated above, apply to a RICO civil conspiracy case.  *See Beck v. Prupis*, 529 U.S.

494, 500, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000) (stating that "to determine what it means to

be 'injured . . . by reason of' a 'conspir[acy],' we turn to the well-established common law of civil conspiracy").

As mentioned previously in this Joint Motion to Dismiss, an essential element of civil conspiracy is an agreement between two or more persons to take part in an unlawful action or a lawful action in an unlawful manner. *See Halberstam*, 705 F.2d at 479.  In this case, Plaintiffs fail to establish that the GlobalOptions Defendants were a part of any agreement between two or more persons.  The only allegation of an agreement involving the GlobalOptions Defendants comes in the form of the alleged Superkahn Memorandum.  However, not even the Complaint refers to this document as an "agreement," but, rather insinuates that there was an agreement because of what appears in a second memorandum drafted by the Kazakhstan Prosecutor General, Daulbayev.  Therefore, Plaintiffs have not established the existence of a conspiracy.  As a result, the GlobalOptions Defendants are not liable for conspiring to violate RICO.

Plaintiffs failed to establish that the GlobalOptions Defendants either violated RICO or conspired to violate RICO, and as a result, the eighth claim for relief must be dismissed.

### E. <u>Plaintiffs Failed to Join the Republic of Kazakhstan and President Nazarbayev Required Parties in the Action</u>

Rule 12(b)(7) allows a court to dismiss a cause of action for "failure to join a party under Rule 19,"  which provides that all required parties are joined in an action.  *See* Fed. R. Civ. P. 19(a).  In order to dismiss an action under Rule 12(b)(7), a court must determine if a party meets the description of a necessary party under Rule 19(a), and if so, be considered indispensible under Rule 19(b).  *See Corsi*, 2008 U.S. Dist. LEXIS at *7.  A party is necessary in an action if "that person claims an interest relating to the subject of the actions" such that disposition of the action in that person's absence may "impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a); *see also Citizen Potawatomi Nation v. Salazar*, 624

F. Supp. 2d 103, 113 (D.D.C. 2009) (noting that the interest need not be "concrete or compelling" so long as it is "legitimate and non-frivolous"). Rule 19(b) lists four non-exclusive factors for a court to consider to determine whether a party is indispensable. *See Corsi,* 2008 U.S. Dist. LEXIS at *9. These factors include (1) the "extent a judgment rendered in the [party's] absence might prejudice that [party] or those already parties;" (2) "the extent to which . . . any prejudice could be lessened or avoided;" (3) "whether a judgment rendered in the [party's] absence [would] be adequate;" and (4) "whether the plaintiff would have any adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(1)-(4); *see also id.*

Plaintiffs' Complaint focuses on allegations that the GlobalOptions Defendants were the agents of the President Nazarbayev and assisted the Republic of Kazakhstan in its attempt to defame and deprive the Plaintiffs of their assets. *See Complaint* at ¶ 11 ("[t]o facilitate his multi-faceted campaign against Devincci and Issam Hourani and their families, President Nazarbayev enlisted . . . and utilized the services of various third parties as *agents*, including . . . GlobalOptions, Inc., and GlobalOptions Management, Inc.") (emphasis added). Plaintiffs' allegations in the Complaint consistently state that the GlobalOptions Defendant worked in concert with President Nazarbayev and the Republic of Kazakhstan to injure the Plaintiffs. *See Complaint* at ¶¶ 80, 85, 131-132, 172-174.

As agents of President Nazarbayev and the Republic of Kazakhstan a final judgment for the GlobalOptions Defendants would also bind Republic of Kazakhstan and President Nazarbayev. "[A] final judgment on the merits of a cause of action (binds) the parties to the suit and their privies." *Gill & Duffus Services, Inc. v. A.M. Nural Islam*, 675 F.2d 404, 405 (D.C. Cir. 1982). "[T]he term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those

others were not party to the lawsuit." *Id.*  As such, "a decision on the merits against the agent is

res judicata against the principal if the prior action concerned a matter within the scope of the

agency." *Century Int'l Arms, Ltd. v. Fed. State Unirary Enter. State Corp.*, 172 F. Supp. 2d 79,

96 (D.D.C. 2001); *see Usher v. 1015 N Street, N.W. Cooperative Assoc.*, 120 A.2d 921, 923

(Mun. Ct. App. D.C. 1956).

This Court may only allow this action to proceed if it is possible in "equity and good

conscience" to do so in consideration of the four factors listed above.  Fed. R. Civ. P. 19(b);

*Citizen Potawatomi Nation, 624 F. Supp.* at 110.  Although it is typically in the court's

discretion, the Court of Appeals for the D.C. Circuit has observed that "'there is very little room

for balancing of other factors' set out in Rule 19(b) where a necessary party under Rule 19(a) is

immune from suit because immunity may be viewed as one of those interests 'compelling by

themselves.'" *Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas v. Babbitt,* 43

F.3d 1491, 1494 (D.C. Cir. 1995) (quoting *Wichita & Affiliated Tribes of Okla. v. Hodel,* 788

F.2d 765, 777 (D.C. Cir. 1986)).  As such, the privilege of sovereign immunity protects

Kazakhstan from suit in the United States.  *See* 28 U.S.C. §§ 1330, 1602-1611.  The Foreign

Sovereign Immunities Act of 1976 provides that "a foreign state shall be immune from the

jurisdiction of the courts of the United States and of the States except as provided in sections

1605 to 1607." *Id.* at §1604; *see also Republic of the Philippines v. Pimentel*, 553 U.S. 851, 865

(2008) ("[t]he Court has observed that the doctrine is designed to give foreign states and their

instrumentalities some protection from the inconvenience of suit").  Therefore, joinder of  the

Republic of Kazakhstan and President Nazarbayev is impossible leaving this Court with "a more

circumscribed inquiry" as to whether this matter may proceed "in equity and good conscience" in

Kazakhstan's and President Nazarbayev's absence.  *Kickapoo Tribe*, 43 F.3d at 1497.

First, the Republic of Kazakhstan, President Nazarbayev and the GlobalOptions Defendants will be prejudiced by a judgment rendered in the absence of the Republic of Kazakhstan and President Nazarbayev.  The Supreme Court recently held that, in considering whether a party will incur prejudice if a case proceeds in its absence, a court must give adequate weight to a nation's sovereign status.  *See Republic of the Philippines*, 553 U.S. at 865, 870. "Giving full effect to sovereign immunity promotes the comity interest that have contributed to the development of the immunity doctrine."  *Id.* at 866.

At its base, this case concerns disputes between Plaintiffs, the Republic of Kazakhstan, and President Nazarbayev. *See Complaint* at ¶¶ 8-9.   Plaintiffs make bold accusations against the Republic of Kazakhstan and its President.  Essentially every claim is tied to actions by the Kazakhstan government and President Nazarbayev.  A judgment against the GlobalOptions Defendants would inevitably impugn liability on the Republic of Kazakhstan and President Nazarbayev.  As such, "[t]here is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so.  The dignity of a foreign state is not enhanced if other nations bypass its courts without right or good cause." *Id.*  The "potential for injury" to the Republic of Kazakhstan's comity and dignity interests is the type of prejudice Rule 19(b) seeks to avoid.  *Id.* at 867-68.

Additionally, the GlobalOptions Defendants would be equally prejudiced if this action proceeds without the Republic of Kazakhstan and President Nazarbayev.  Each claim involves the alleged conduct of President Nazarbayev and the Republic of Kazakhstan.  Because, the Republic of Kazakhstan and President Nazarbayev are protected by sovereign immunity, the GlobalOptions Defendants will not be able to obtain discovery from them.

Second, the prejudice to President Nazarbayev, the Republic of Kazakhstan and the

GlobalOptions Defendants may not be lessened.  The Complaint and ICSID Proceeding clearly demonstrate that this action is a dispute between Plaintiffs, the President Nazarbayev and the Republic of Kazakhstan, and was brought in a U.S. court solely upon conclusory allegations against the GlobalOptions Defendants in order to seek discovery from the GlobalOptions Defendants.  No form of relief can lessen the prejudice the GlobalOptions Defendants will suffer if forced to defend against these vague allegations without the principal actors being a part of the action to clarify the claims.

Third, any judgment rendered in the Republic of Kazakhstan's and President Nazarbayev's absence would not be adequate.  There is a "social interest in the efficient administration of justice and the avoidance of multiple litigation." *Republic of the Philippines*, 553 U.S. at 870.  Allowing this action to proceed without President Nazarbayev and the Republic of Kazakhstan would not further this social interest.  Because Plaintiffs' assets were allegedly seized and are controlled by President Nazarbayev and the Kazakhstan government, any judgment against the GlobalOptions Defendants would certainly implicate the Republic of Kazakhstan and President Nazarbayev, causing them to make the Plaintiffs whole, without affording President Nazarbayev or the Republic of Kazakhstan the right to defend their interest.  Additionally, the Republic of Kazakhstan and President Nazarbayev would have no legal standing to dispute a judgment by this Court since they were not a party to the action.

Finally, Plaintiffs can avoid any injustice to the parties since there is an adequate remedy if this action is dismissed.  Caratube is in the middle of the ICSID Proceeding against the Republic of Kazakhstan, pertaining to Kazakhstan's breach of the Caratube oil contract.  The timing of Plaintiffs' Complaint, and the broad and vague nature of the allegations against the GlobalOptions Defendants, makes it clear that Plaintiffs' only motive for bringing this action in a

U.S. court is based on the fact that Caratube was not able to successfully obtain discovery from the Defendants to support their claims in the ICSID Proceeding. Having already demonstrated the possibility of proceeding against the Republic of Kazakhstan in the ICSID Proceeding, Plaintiffs fail to provide an explanation as to why these additional claims cannot be adequately filed in the same or a subsequent ICSID arbitration.   Therefore, given these facts this action must be dismissed pursuant to Rule 12(b)(7).

## V.   __CONCLUSION__

As described above, Plaintiffs allege that the GlobalOptions defendants conspired and worked in concert with President Nazarbayev and the Kazakhstan government to defame and deprive Plaintiffs of their assets.  Unfortunately, Plaintiffs lack standing to sue on their claims, completely fail to satisfy the pleading requirements of Federal Rules of Civil Procedure, and fail to join all required parties.  Based on these deficiencies, Plaintiffs should not be allowed to proceed with its claims against the GlobalOptions Defendants and the Complaint should be dismissed in its entirety.

**WHEREFORE**, Defendants GlobalOptions, Inc. and GlobalOptions Management, Inc. respectfully request that this Court dismiss Plaintiffs' Complaint against them in its entirety, and grant any further relief that this Court deems proper.

.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 22, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record listed below via transmission of Notices of Electronic Filing generated by CM/E-CF or in some other authorized manner for those counsel who are not authorized to received Notices of Electronic Filing electronically.

<u>Service List</u>

Stuart H. Newberger, Esq. (CM/ECF)
Counsel for Plaintiffs

Michael L. Martinez, Esq. (CM/ECF)
Counsel for Plaintiffs

Timothy L. Foden, Esq. (CM/ECF)
Counsel for Plaintiffs

Warren Anthony Fitch, Esq. (CM/ECF)
Counsel for Defendants Krull Corporation and Alexander V. Mirtchev

/s/ Mark David Hunter_____
Mark David Hunter